UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

LINDA WAGONER,

     Plaintiff,

        vs.

EVERHOME MORTGAGE INC.,
EVERBANK, FEDERAL HOME LOAN
MORTGAGE CORPORATION, DITECH
FINANCIAL LLC, NEW PENN
FINANCIAL, LLC, SHELLPOINT
MORTGAGE SERVICING.

     Defendants.

Civil Action No.

**COMPLAINT AND JURY DEMAND**

LINDA WAGONER, of full age, hereby complains of

Defendants as follows:

**JURISDICTION AND VENUE**

**1.** Jurisdiction is appropriately laid in the United States

District Court, District of New Jersey pursuant to 28 U.S.C. §1331

as the claim in question is based upon a federal statute and

Federal Question Jurisdiction.

**2.** Venue is appropriately laid in the District Court of New

Jersey pursuant to 28 U.S.C. §1391(b)(2) as the events giving rise

to the claim occurred substantially within the State of New Jersey.

**PARTIES**

**3.** Plaintiff LINDA WAGONER is a 65-year-old senior citizen who

has been employed by KPMG for the past 10 years, is currently a

1

senior administrative assistant, and owns and resides in the real property located at 39 Alps Road, Township of Wayne, New Jersey, 07470.

4.   Defendant EVERHOME MORTGAGE INC. (hereafter "EVERHOME") previously serviced the mortgage loan that is the subject of this litigation.  EVERHOME regularly conducts business in the state of New Jersey and maintains its headquarters at 8100 Nations Way, Jacksonville, Florida, 32232.

5.   Defendant EVERBANK, upon information and belief, is the owner and/or parent company of EVERHOME MORTGAGE INC, and regularly conducts business in the state of New Jersey. EVERBANK maintains its headquarters at 8100 Nations Way, Jacksonville, Florida, 32232.

6.   Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION (hereafter "Freddie Mac") was, and purports to still be, the owner of the mortgage loan that is the subject of this litigation. FREDDIE MAC was or/and is the principal of the servicing companies also named as defendants within this Complaint, and hired and/or contracted said servicing companies to serve as FREDDIE MAC's agent to service and collect on the subject loan. FREDDIE MAC regularly conducts business in the state of New Jersey.  FREDDIE MAC maintains its principal place of business at 8200 Jones Branch Drive, McLean, Virginia, 22102.

**7.** Defendant DITECH FINANCIAL, LLC (hereafter "DITECH") was formerly known as Green Tree Servicing LLC, and previously serviced the mortgage loan that is the subject of this litigation. DITECH regularly conducts business in the state of New Jersey and maintains its headquarters at 345 Saint Peter Street, Saint Paul, Minnesota, 55102.

**8.** SHELLPOINT MORTGAGE SERVICING (hereafter "SHELLPOINT") is the current servicer of the subject loan that is the subject of this litigation.  SHELLPOINT regularly conducts business in the state of New Jersey and maintains its headquarters at 55 Beattie Place, Suite 110 Greenville, South Carolina, 29601.

**9.** NEW PENN FINANCIAL, LLC (hereafter "NEW PENN") is the purported current owner of the subject loan that is the subject of this litigation. NEW PENN regularly conducts business in the state of New Jersey and maintains its headquarters at 8100 Jones Breach Drive MS B13 McLean, VA 22102.

## Facts Common to All Counts

**10.** In September, 2006, Plaintiff LINDA WAGONER executed a note and mortgage in favor of First Horizon Home Loan Corporation.

**11.** Due to unforeseen economic circumstances, Plaintiff incurred a hardship and defaulted on the terms of this loan.

**12.** The subject loan was subsequently serviced by Defendant EVERHOME.

**13.**   During Defendant EVERHOME's tenure of servicing the subject loan, Defendant FREDDIE MAC was the owner of the loan.

**14.**   In order to save her home, Plaintiff applied for a loan modification with Defendant EVERHOME.

**15.**   Defendants EVERHOME and FREDDIE MAC approved Plaintiff for a Trial Period Plan, set to begin June 1, 2009.

**16.**   Shortly thereafter, Plaintiff entered into a trial period plan agreement (hereafter "TPP") with EVERHOME and FREDDIE MAC.

[**Exhibit 1:**   Trial Period Plan "TPP"]

**17.**   The TPP stated that Plaintiff was to make three (3) payments of $1,265.84 on or before June 1, 2009; July 1, 2009; and August 1, 2009. [Id.]

**18.**   The TPP stated that if Plaintiff was in compliance with this Plan, and her representations continued to be true, the lender would provide her with a modification agreement. [Id.]

**19.**   Plaintiff made the three required payments, and her representations remained true.

**20.**   Despite Plaintiff abiding by EVERHOME and FREDDIE MAC's TPP requirements, Plaintiff did not receive a modification agreement.

**21.**   Plaintiff was told by EVERHOME that the modification was somehow delayed in underwriting.

**22.**   Despite not being required to do so, after the final payment of August 1, 2009 was due and made, Plaintiff continued making

4

payments of $1,265.84 each subsequent month after and through December 2009, at the direction of EVERHOME.

23. On December 11, 2009, Plaintiff rendered another payment on the terms of the TPP, for the payment that would be due January 1, 2010.

24. On or about December 11, 2009, Plaintiff received a permanent modification offer. [**Exhibit 2**: Permanent Modification]

25. The terms of the Permanent Modification stated that the loan was modified on November 1, 2009, and the first payment of the Permanent Modification was due December 1, 2009.

26. Plaintiff executed the permanent loan documents, and submitted them to EVERHOME.

27. Plaintiff continued making consecutive payments on the loan from January 2010 on.

28. The monthly payments in the first year of the permanent modification were supposed to be $1,265.84 per month.

29. In April of 2010, the monthly payments inexplicably increased to $1,289.78.

30. After one year, in April of 2011, the monthly payments inexplicably increased to approximately $1,333.18 per month.

    a. Plaintiff believed that this was due to a normal increase in her escrow payments for tax purposes.

    b. Plaintiff was unaware at the time that her taxes increased from $5,938.23 in 2009 to $6,200.47 in 2010.

**31.** After another year, in 2012, the monthly payments reduced to $1,266.14 per month.

  a. This reduction in monthly payments concerned Plaintiff because her taxes increased.

  b. Plaintiff's escrow payments reduced from $640.39 in 2011 to $530.71 in 2012.

  c. This reduction in monthly payments occurred despite claims from EVERHOME and FREDDIE MAC that there was an escrow deficiency.

**32.** In or about April of 2013, the payments again increased to approximately $1,445.21 per month.

**33.** On or about April 18, 2013, EVERHOME sent Plaintiff a letter indicating that the reason for the mortgage payment increase of $1,266.14 to $1,445.21 from 2012 to 2013 was due to an escrow deficiency of $2,670.82. [**Exhibit 3**: April 18, 2013 EVERHOME Letter].

**34.** In or about 2014, the payments were increased to over $1,524.96 per month.

**35.** In a letter dated June 18, 2014, EVERHOME informed Plaintiff that the servicing of the loan transferred from EVERHOME to DITECH, effective May 16, 2014.

**36.** At the time of the servicing transfer, DITECH was known as GREENTREE SERVICING LLC.

**37.** In or about July 2014, DITECH sent a notice to Plaintiff declaring she was in default under the terms of the Note and Mortgage due to missing payments.

**38.** Plaintiff attempted to rectify this situation by contacting Defendants EVERHOME, and then DITECH, to determine why her monthly payments inexplicably rose.

**39.** Plaintiff attempted to resolve this discrepancy with EVERHOME and DITECH.

**40.** Plaintiff was told by both EVERHOME and DITECH that her account had a purported escrow deficiency of approximately $3,000.00.

**41.** Plaintiff was also told that three (3) of her trial period payments were applied to January, February, and March of 2010.

**42.** Plaintiff made payments to EVERHOME to be applied to January, February, and March of 2010.

**43.** EVERHOME received and cashed these payments.

**44.** The reason for the purported escrow deficiency was never explained.

**45.** Any purported escrow deficiency repayment should have been made a term in the permanent modification.

**46.** Shortly after declaring Plaintiff in default, DITECH refused to accept payments from Plaintiff.

**47.** DITECH also returned monies in the amount of $2,685.50 to Plaintiff.

7

**48.** On or about December 31, 2014, DITECH filed an action for foreclosure against Plaintiff in New Jersey Superior Court under the docket number PAS-F-054322-14.

**49.** The matter resolved by way of a trial held October 16, 2015.

**50.** The court dismissed DITECH's complaint with prejudice.

**51.** The court determined that DITECH could not establish Plaintiff's default, the amount due, or explain why Plaintiff's monthly payments increased.

**52.** Since the court's order dismissing the foreclosure action against Plaintiff, Plaintiff has been paying the taxes and insurance on her home directly to the town and insurance company, respectively.

**53.** Despite being successful in her case, Plaintiff's credit continues to be damaged.

**54.** Despite being successful in her case, Plaintiff has yet to be made whole.

**55.** To date, Defendants have not corrected any information regarding Plaintiff's mortgage loan, which was found to be false by the court in the foreclosure trial.

**56.** SHELLPOINT generated a letter on or about June 27, 2017, which was sent directly to Plaintiff, despite knowing that Plaintiff was represented by counsel. [**Exhibit 4:** June 27, 2017 SHELLPOINT Letter]

**57.** The June 27 letter states that the servicing of the subject loan transferred from DITECH to SHELLPOINT on or about June 16, 2017.

**58.** The June 27 letter states that the payment due date is June 1, 2014 and the monthly payment amount is $1,524.96.

**59.** SHELLPOINT generated a letter on or about June 29, 2017, title VALIDATION OF DEBT NOTICE, which was sent directly to Plaintiff, despite knowing that Plaintiff was represented by counsel. [**Exhibit 5**: June 29, 2017 SHELLPOINT Validation of Debt Notice]

**60.** The Validation of Debt notice states the following false information:

      a. The current principal balance is $258,093.56.

      b. The current accrued unpaid interest is $23,298.48.

      c. The escrow advances are $21,605.06.

      d. Unpaid late fees and other charges amount to $4,123.53.

      e. The total amount of the debt is $307,120.63.

      f. The creditor to whom the debt is owed is New Penn Financial, LLC

**61.** On or about July 1, 2017, DITECH sent a Final Escrow Account Disclosure Statement directly to Plaintiff, despite knowing that Plaintiff was represented by counsel. [**Exhibit 6**: DITECH Escrow Disclosure Statement]

**62.** On or about July 5, 2017, a Qualified Written Request/Notice of Error ("QWR") indicating errors on the account pursuant to 12

USC §2605(e)(1)(B), and Validation of Debt notice pursuant to 15 USC §1692g were sent to SHELLPOINT via certified mail with the tracking number 7016 1370 0001 9378 4957.

**63.** The QWR and Validation of Debt Notice included the trial court's Order and reasons for dismissing the foreclosure complaint with prejudice.

**64.** The QWR and Validation of Debt Notice also informed SHELLPOINT that Plaintiff is represented by current counsel.

**65.** The QWR with the trial court's Order and reasoning put SHELLPOINT on notice that there was no default by Plaintiff, and that the amount being sought against Plaintiff were incorrect.

**66.** The QWR and Validation of Debt Notice were received by SHELLPOINT on July 11, 2017 at 6:54A.M.

**67.** On July 13, 2017, SHELLPOINT generated a letter in response to the QWR, in which SHELLPOINT stated it would provide a written response to the QWR within fifteen (15) days. This letter was sent directly to Plaintiff, despite knowing that Plaintiff is represented by counsel. [**Exhibit 7**: July 13, 2017 SHELLPOINT QWR Acknowledgment Letter]

**68.** On or about July 17, 2017, SHELLPOINT generated a letter to Plaintiff indicating that the loan is being serviced by SHELLPOINT and the owner of the subject loan NEW PENN. This letter was sent directly to Plaintiff, despite knowing that Plaintiff is

represented by counsel. [**Exhibit 8:** July 17, 2017 SHELLPOINT Letter]

**69.** The July 17, 2017 did not address the errors indicated in the QWR.

**70.** Instead of addressing the errors and the court's order indicating that there was no default and the amount requested was wrong, SHELLPOINT sent a mortgage statement dated July 19, 2017. This Mortgage Statement was sent directly to Plaintiff, despite knowing that Plaintiff is represented by counsel. [**Exhibit 9**: July 19, 2017 SHELLPOINT Mortgage Statement].

**71.** The July 19 Mortgage Statement continued to falsely state the following information:

    a. The contractual due date was June 1, 2014, and indicates an amount due of $59,065.35.

    b. There is an escrow balance of $21,605.06.

    c. There was a property inspection on July 10, 2017.

**72.** SHELLPOINT has no right to conduct property inspections on the subject property.

**73.** SHELLPOINT has no right to charge their improper property inspections to Plaintiff.

**74.** The information provided in SHELLPOINT's July 19 Mortgage Statement are false, per the foreclosure trial order and reasoning.

**75.** On August 8, 2017, SHELLPOINT generated a letter indicating that it required more time to address the QWR "due to the complex

11

nature of the matter." This letter was sent directly to Plaintiff, despite knowing that Plaintiff is represented by counsel. [**Exhibit 10**: August 8, 2017 SHELLPOINT Letter Requesting More Time to Address QWR]

76.  On August 9, 2017, SHELLPOINT generated a letter in response to the Validation of Debt notice which utilized the same false information that SHELLPOINT's predecessor, DITECH, used at the foreclosure trial. It also included SHELLPOINT's loan history which upon information and belief was based on the false loan history from EVERHOME and DITECH. This letter was sent directly to Plaintiff's counsel. [**Exhibit 11:** August 9, 2017 SHELLPOINT Response to Validation of Debt notice]

    a. The loan history SHELLPOINT attached to EXHIBIT 11 has been omitted from this Complaint by Plaintiff.

77.  SHELLPOINT's response to the validation of debt notice also included the billing history generated by EVERHOME which was found to be inaccurate during the foreclosure trial.

78.  The August 9, 2017 response was sent by SHELLPOINT despite being in possession of the trial court's order and decision from the foreclosure trial, which was provided with the QWR and Validation of Debt notice.

79.  On or about August 19, 2017, SHELLPOINT created and sent a Mortgage Statement directly to Plaintiff's counsel. [**Exhibit 12:** August 19, 2017 SHELLPOINT Mortgage Statement]

**80.**  The August 19 SHELLPOINT Mortgage Statement falsely states the following information:

      a. The regular monthly payment is $1,679.14;

      b. The amount overdue is $59,078.35;

      c. The total amount due is $60,757.49;

      d. The contractual due date is June 1, 2014;

      e. The escrow balance is $22,002.49;

    **81.**  The August 19 SHELLPOINT Mortgage Statement impermissibly paid the Town Tax Bill on or about August 4, 2017.

    **82.**  Plaintiff has been paying all of tax and insurance payments related to the subject property.

    **83.**  The August 19 SHELLPOINT Mortgage Statement impermissibly charged a property inspection disbursement on or about August 8, 2017.

**84.**  Instead of addressing the QWR, SHELLPOINT sent Plaintiff a Notice of Intent to Foreclose ("NOI") dated August 25, 2017 directly to Plaintiff, despite knowing Plaintiff is represented by counsel. [**Exhibit 13**:  NOI]

**85.**  The NOI espouses the same false information that SHELLPOINT was told was false in the QWR with the foreclosure trial court's order and reasoning.

**86.**  The NOI makes the following false statements:

13

a. That the "account is past due for the payment due on 06/01/2014."

b. That payments for 39 months equate to $54,928.82, which equals $1,408.43 per month.

c. The NOI impermissibly charges late fees of $923.17.

d. The NOI impermissibly charges attorneys' fees 3,200.36.

e. The NOI impermissibly charges inspection fees, despite SHELLPOINT not having the right to conduct inspections on the subject property, in the amount of $26.00.

f. The NOI incorrectly asserts an escrow shortage of $22,002.49.

g. The NOI incorrectly asserts that the total amount due as of the date of the NOI is $59,078.35.

**87.** FREDDIE MAC declares itself to be the owner of the subject loan. [**Exhibit 14**: FREDDIE MAC loan lookup].

**88.** On or about September 12, 2017, SHELLPOINT sent a Single Point of Contact (SPOC) notice directly to Plaintiff, despite knowing Plaintiff is represented by counsel. [**Exhibit 15**: September 12, 2017 SHELLPOINT SPOC notice].

**89.** On or about September 13, 2017, SHELLPOINT sent another SPOC letter directly to Plaintiff, despite knowing Plaintiff is represented by counsel. [**Exhibit 16**: September 13, 2017 SHELLPOINT 2nd SPOC notice].

90.   SHELLPOINT sent a Mortgage Statement dated September 18, 2017 directly to Plaintiff, despite knowing Plaintiff is represented by counsel. [**Exhibit 17**, September 18, 2017 Mortgage Statement].

91.   The September 18, 2017 Mortgage Statement states the following false information:

      a. It states that the regular monthly payment amount is $1,679.14;

      b. It impermissibly adds $103.08 in total fees and charges;

      c. It states that $60,770.49 in payments are overdue;

      d. It states that the total amount due is $62,552.71;

      e. It impermissibly adds two late charges dated August 31, 2017 and September 17, 2017, each in the amount of $51.54;

      f. It impermissibly adds a property inspection charge of $13.00 from September 7, 2017 when no property inspection is permitted.

92.   At the time of the filing of this Complaint, SHELLPOINT has failed to respond to the QWR.

93.   Plaintiff has been harmed by Defendants' actions.

### COUNT I
Violations of the Fair Debt Collection Practices Act ("FDCPA")
(SHELLPOINT and DITECH)

94.   Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**95.** Plaintiff is a consumer as defined by the FDCPA, 15 USC §1692a(3).

**96.** SHELLPOINT and DITECH (hereafter referred to as "Defendants" collectively through Count I) are debt collectors as defined by the FDCPA, 15 USC §1692a(6).

**97.** The following are communications, pursuant to 15 USC §1692a(2), from Defendants as defined by the FDCPA:

    a. The June 27, 2017 SHELLPOINT letter [**Exhibit 4**];

        i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt; and

        ii. This violates 15 USC §1692e(1)(A) by falsely stating that the payment due date/default date is June 1, 2014, and that the monthly amount due for June 1, 2014 is $1,524,96.

    b. The June 29, 2017 Validation of Debt Notice from SHELLPOINT [**Exhibit 5**];

        i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt; and

ii. This violates 15 USC §1692e(1)(A) by providing the following false information: stating the principal balance, accrued unpaid interest, escrow advances, and the total amount due; and

iii. This violates 15 USC §1692g(a)(1) by providing false information on the amount owed on the debt;

iv. This violates 15 USC §1692g(a)(2) by providing false information on the name of the creditor to whom the debt is owed; and

v. This violates 15 USC §1692f(1) by impermissibly charging interest, fees, and expenses not authorized by any agreement creating the debt or by law;

c. The July 1, 2017 DITECH Final Escrow Account Disclosure Statement [**Exhibit 6**];

i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and DITECH knew that Plaintiff was represented by an attorney in connection with the subject debt; and

ii. This violates 15 USC §1692e(1)(A) by providing false information in regard to the escrow balance and amount due.

d. The July 13, 2017 SHELLPOINT QWR acknowledgment letter [**Exhibit 7**];

17

      i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt;

e. the July 17, 2017 SHELLPOINT letter [**Exhibit 8**];

      i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt; and

      ii. This violates 15 USC §1692g(a)(2) by providing false information on the name of the creditor to whom the debt is owed.

f. the July 19, 2017 SHELLPOINT Mortgage Statement [**Exhibit 9**];

      i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt;

      ii. This violates 15 USC §1692e(1)(A) by providing false information in regard to the amount due, the escrow balance, and the regular monthly payment; and

    iii. This violates 15 USC §1692g(a)(1) by providing false information on the amount due; and

    iv. This violates 15 USC §1692f(1) by impermissibly charging interest, fees, and expenses not authorized by any agreement creating the debt or by law.

g. the August 8, 2017 SHELLPOINT letter [**Exhibit 10**];

    i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt; and

h. the August 9, 2017 SHELLPOINT letter [**Exhibit 11];**

    i. This violates 15 USC §1692e(1)(A) by providing false information in regard to the amount due, the escrow balance, and it contains an accounting history from EVERHOME found to be false; and

    ii. This violates 15 USC §1692g(a)(1) by providing false information on the amount due.

i. The August 19, 2017 Mortgage Statement [**Exhibit 12**];

    i. This violates 15 USC §1692e(1)(A) by providing false information in regard to the amount due, the escrow balance, and the regular monthly payment; and

      ii. This violates 15 USC §1692g(a)(1) by providing false information on the amount due.

      iii. This violates 15 USC §1692f(1) by impermissibly charging interest, fees, and expenses not authorized by any agreement creating the debt or by law.

j. The August 25, 2017 NOI [**Exhibit 13**];

      i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt;

      ii. This violates 15 USC §1692e(1)(A) by providing false information in regard to the default date/due date, that the account is due for 39 months of payments of $1,408.43 each, that there is an escrow shortage of $22,002.49, that the total amount due is $59,078.35;

      iii. This violates 15 USC §1692g(a)(1) by providing false information on the amount due;

      iv. This violates 15 USC §1692f(1) by impermissibly charging late fees, attorneys' fees, and inspection fees; and

      v. This violates 15 USC §1692e(5) by threatening to terminate Plaintiff's ownership of the property by

commencing foreclosure action in a court of competent jurisdiction, as this is a threat to take action that cannot legally be taken.

k. The September 12, 2017 SHELLPOINT SPOC notice [**Exhibit 15**];

    i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt.

l. The September 13, 2017 SHELLPOINT SPOC notice **[Exhibit 16]**;

    i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt

m. The SHELLPOINT September 8, 2017 Mortgage Statement [**Exhibit 17**].

    i. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt;

    ii. This violates 15 USC §1692c(a)(2) because this communication was sent directly to Plaintiff, and

SHELLPOINT knew that Plaintiff was represented by an attorney in connection with the subject debt;

iii. This violates 15 USC §1692e(1)(A) by providing false information in regard to the amount due, the escrow balance, and the regular monthly payment; and

iv. This violates 15 USC §1692g(a)(1) by providing false information on the amount due; and

v. This violates 15 USC §1692f(1) by impermissibly charging interest, fees, and expenses not authorized by any agreement creating the debt or by law

98. Defendants have clearly engaged in a pattern and/or practice of violations of the FDCPA.

99. The wrongdoing identified in this Complaint is intended to place Defendants on notice of their actions and is not an exhaustive list of wrongdoing.  It is anticipated that additional violations of the Fair Debt Collection Practices Act will be discovered during discovery.

100. As a result of the actions of Defendants, Plaintiff suffered damages.

101. As a result of the actions of Defendants, Plaintiff is entitled to all relief under 15 U.S.C. §1692k including but not

limited to statutory damages, actual damages, attorney fees and costs of suit.

**WHEREFORE**, PLAINTIFF demands:

a.   Compensatory Damages

b.   Punitive Damages

c.   Statutory Damages

d.   Restitution

e.   Injunctive Relief

f.   Attorney fees and costs

All other relief this Court determines to be just and fair.

## COUNT II
Violations of the Real Estate Settlement Procedures Act
("RESPA")
(SHELLPOINT)

**102.**   Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**103.**   SHELLPOINT is the servicer of the subject loan.

**104.**   On or about July 5, 2017, a Qualified Written Request ("QWR"), as defined by 12 USC §2605.

**105.**   The QWR was received by SHELLPOINT on July 11, 2017 at 6:54A.M.

**106.**   On or about July 13, 2017, SHELLPOINT sent a letter directly to Plaintiff [**Exhibit 7**] indicating that a written response would be provided in fifteen (15) days.

**107.**   No response was ever provided.

**108.**   Pursuant to 12 USC §2605(e)(2), SHELLPOINT has thirty (30) days (excluding weekends and public holidays) after receipt from a borrower of a QWR to respond.

**109.**   Thirty days from July 11, 2017 is August 22, 2017.

**110.**   On August 8, 2017, SHELLPOINT sent a letter stating that it required more time to answer the QWR, pursuant to 12 USC §2605(e)(4). [**Exhibit 10**].

**111.**   The due date for a response to the QWR would have been September 13, 2017.

**112.**   SHELLPOINT has not provided a response to the QWR since the date of the filing of this Complaint.

**113.**   As a result of the actions of Defendants, Plaintiff suffered damages.

**114.**   Despite not answering the QWR, on August 31, 2017, SHELLPOINT provided information to the credit reporting agencies (Equifax, TransUnion, and Experian) regarding overdue payment purportedly due by the Plaintiff and relating to such period of the QWR, in violation of 12 USC §2605(e)(3).

**115.**   SHELLPOINT is the agent/subcontractor/servicer of FREDDIE MAC, and conducts business regarding the subject loan pursuant to instructions from FREDDIE MAC.

**116.**   As a result of the actions of Defendants, Plaintiff is entitled to all relief under 12 U.S.C. §2605(f)(1) and (3)

including but not limited to statutory damages, actual damages, attorney fees and costs of suit.

**WHEREFORE**, PLAINTIFF demands:

      a. Compensatory Damages

      b. Punitive Damages

      c. Statutory Damages

      d. Restitution

      e. Injunctive Relief

      f. Attorney fees and costs

All other relief this Court determines to be just and fair.

## COUNT III
Breach of Contract
(As to All Defendants)

**117.**   Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**118.**   EVERHOME and FREDDIE MAC offered Plaintiff a Permanent Modification in or about December 2009.

**119.**   Plaintiff accepted the permanent modification as drafted by EVERHOME and FREDDIE MAC.

**120.**   Both parties provided consideration to enter into the permanent modification.

**121.**   Plaintiff relied on the terms of the permanent modification as drafted by EVERHOME and FREDDIE MAC.

**122.**    Plaintiff's modified payments were $1,265.84 a month.

**123.**    Plaintiff complied with all terms of the permanent modification.

**124.**    EVERHOME and FREDDIE MAC inappropriately raised Plaintiff's monthly payments on her permanent modification to $1,333.18 in or about April, 2011 due to an alleged escrow deficiency.

**125.**    EVEHOME and FREDDIE MAC unjustly requested, and accepted, more money from Plaintiff than they were entitled.

**126.**    Plaintiff believed that the increase in the monthly payments were due to an increase in taxes.

**127.**    Plaintiff made the inappropriately raised payments, and paid late charges when applicable.

**128.**    In or about April, 2012, Plaintiff's payments lowered to $1,266.14.

**129.**    Plaintiff believed the lowering of her the monthly payment was in error.

**130.**    The monthly payment was lowered due to EVERHOME and FREDDIE MAC reducing Plaintiff's tax payments.

**131.**    Plaintiff's taxes did not decrease.

**132.**    Unfortunately, in or about April, 2013, EVERHOME and FREDDIE MAC increased Plaintiff's monthly mortgage payments by almost $180 per month by raising them to $1,445.21.

**133.**    In or about April, 2013, EVERHOME sent Plaintiff a letter indicating that the raise in payment from 2012 to 2013 of $1,266.14 to $1,445.21 was due to an escrow deficiency of $2,670.82.

**134.**    Plaintiff attempted to make all of the inappropriately raised monthly payments.

**135.**    Plaintiff at times had to pay late fees with the payments.

**136.**    EVERHOME and FREDDIE MAC caused financial hardship to Plaintiff.

**137.**    In or about April, 2014, EVERHOME and FREDDIE MAC inappropriately raise Plaintiff's monthly mortgage payments again to $1,524.96 per month.

**138.**    Plaintiff attempted to pay as much as she could toward the loan.

**139.**    EVERHOME and FREDDIE MAC's actions cause great financial hardship to Plaintiff.

**140.**    In 2014, Plaintiff disputed the amount owed on the debt and the inappropriate monthly payment increase caused by EVERHOME and FREDDIE MAC.

**141.**    In June, 2014, the servicing of the loan transferred from EVERHOME to DITECH.

**142.**    DITECH unlawfully declared the loan in default as of June 1, 2014.

143.   DITECH refused payments from Plaintiff.

144.   EVERHOME and FREDDIE MAC breached the terms of the permanent modification in April 2013 by raising Plaintiff's monthly mortgage payments to $1445.21 and stating that it was due to an escrow shortage.

145.   At trial, then-Plaintiff, DITECH, on behalf of FREDDIE MAC, stated that the increase in mortgage payments was due to missing payments.

146.   DITECH could not identify which payments were actually missing.

147.   DITECH stated that it took three trial payment plan payments made by Plaintiff in 2009 and applied those payments to January, February, and March of 2010.

148.   Plaintiff made monthly mortgage payments for January, February, and March of 2010.

149.   DITECH and FREDDIE MAC breached the terms of the permanent modification by declaring Plaintiff in default, refusing her payments, and attempting to foreclose on her home.

150.   SHELLPOINT and FREDDIE MAC breached the terms of the modification by again declaring Plaintiff in default and beginning foreclosure proceedings.

151.   FREDDIE MAC may still be the owner of the loan and the principal of servicer EVERHOME and then principal of servicer DITECH and now SHELLPOINT.

**152.**    SHELLPOINT is the current servicer of the loan.

**153.**    NEW PENN may be the current owner of the loan.

**154.**    DITECH was the successor in interest to EVERHOME in relation to all loan servicing matters, including the permanent modification.

**155.**    At trial, DITECH stated that it takes responsibility for all actions in regard to the servicing of the subject loan.

**156.**    SHELLPOINT is the successor in interest to DITECH in relation to all loan servicing matters, including the permanent modification.

**157.**    NEW PENN may be the successor in interest to FREDDIE MAC in relation to ownership of the loan.

**158.**    As a result of Defendants' conducts, Plaintiff has suffered damages.

**159.**    Plaintiff's damages include the inappropriate increases of Plaintiff's monthly mortgage payments, inappropriately assessed late fees, costs of suit, time lost from work, and damage to Plaintiff's credit.

**160.**    Plaintiff is entitled to recover damages resulting from the wrongful conduct of the Defendants.

**WHEREFORE**, PLAINTIFF demands:

       a. Compensatory Damages

       b. Punitive Damages

       c. Statutory Damages

d. Restitution

e. Injunctive Relief

f. Attorney fees and costs

All other relief this Court determines to be just and fair.


**COUNT IV**
VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
(All Defendants)

**161.**   Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**162.**   Plaintiff is a "person" as defined N.J.S.A. 56:8-1(d).

**163.**   Defendants are "persons" as defined by N.J.S.A. 56:8-1(d).

**164.**   The permanent modification constituted an extension of credit and is a transaction covered by the New Jersey Consumer Fraud Act.

**165.**   In relation to their dealings with Plaintiff, Defendants engaged in one or more unconscionable commercial practices as defined by N.J.S.A. §56:8-2.

**166.**   The conduct in question was committed by EVERHOME, DITECH, and SHELLPOINT as agent for FREDDIE MAC, and on information and belief, at the direction and/or instruction of FREDDIE MAC.

167.    If NEW PENN is the owner of the loan, then SHELLPOINT may have acted on behalf of, and at the direction and/or instruction of, NEW PENN.

168.    The acts of Defendants are prohibited by the New Jersey Consumer Fraud Act include but are not limited to the following:

      a. EVERHOME acting on behalf of FREDDIE MAC impermissibly changing Plaintiff's monthly mortgage payments;

      b. EVERHOME on behalf of FREDDIE MAC misapplying Plaintiff's Trial Period Payments and declaring an escrow shortage;

      c. EVERHOME on behalf of FREDDIE MAC impermissibly assessing and collecting late fees on incorrect monthly mortgage payments;

      d. DITECH on behalf of FREDDIE MAC impermissibly declaring Plaintiff in default on the permanent modification, refusing anymore payments, and attempting to foreclose;

      e. SHELLPOINT on behalf of FREDDIE MAC, or on behalf of NEW PENN, damaging Plaintiff's credit, and declaring Plaintiff in default again and attempting to foreclose.

169.    Plaintiff reasonably relied upon the aforesaid concealment and/or omissions and/or misrepresentations of material fact to her detriment and paid substantial sums of money under her reasonable reliance.

170.    The aforesaid misrepresentations were material to the transaction at issue.

171.    As a result of the unconscionable conduct by Defendants, the Plaintiff has suffered injury including but not limited to monetary loss, damage to credit score, loss of equity in her home, and economic loss associated with counsel fees incurred defending a frivolous foreclosure lawsuit and efforts to collect money not owed by Plaintiff.

172.    In light of the aforesaid, defendants violated N.J.S.A. 56:8-1, et seq.

173.    Plaintiff seeks all relief afforded by the New Jersey Consumer Fraud Act including trebled damages, attorney fees and equitable relief as contemplated by the applicable statute.

**WHEREFORE**, PLAINTIFF demands:

       a. Compensatory Damages

       b. Punitive Damages

       c. Statutory Damages

       d. Restitution

       e. Injunctive Relief

       f. Attorney fees and costs

       g. All other relief this Court determines to be just and fair.

## COUNT V
Intentional Infliction of Emotional Distress
(DITECH, SHELLPOINT, FREDDIE MAC, and NEW PENN)

**174.** Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**175.** SHELLPOINT and FREDDIE MAC or NEW PENN are re-attempting to unlawfully take Plaintiff's home, despite Plaintiff already defeating their foreclosure attempts.

**176.** DITECH's initial attempt to wrongfully take Plaintiff's home cause great stress and anxiety to Plaintiff.

**177.** Plaintiff sought medical care and was prescribed medication to help manage her anxiety and stress.

a. Plaintiff was prescribed a anti-depressant to be taken once-a-day;

b. Plaintiff was also prescribed a tranquilizer to be taken as needed when the stress and anxiety was too great.

**178.** Plaintiff believed the wrongful foreclosure was put to rest after Plaintiff won her foreclosure trial.

**179.** Plaintiff waited for DITECH and FREDDIE MAC to fix their errors.

**180.** Instead, DITECH transferred servicing to SHELLPOINT.

**181.** When servicing transferred from DITECH to SHELLPOINT, both FREDDIE MAC and NEW PENN claimed to be the owners of the loan.

**182.**    The servicing transfer created great stress and anxiety to Plaintiff.

**183.**    Plaintiff has continued taking her one-a-day anti-depressant.

**184.**    Plaintiff has had to take tranquilizers more recently since SHELLPOINT sent notice and threatened her with another unjust foreclosure.

**185.**    Plaintiff was terrified that SHELLPOINT, and FREDDIE MAC or NEW PENN would attempt to unlawfully take her house again.

**186.**    SHELLPOINT, and FREDDIE MAC or NEW PENN are now attempting to unlawfully take Plaintiff's house again.

**187.**    SHELLPOINT's, and FREDDIE MAC's or NEW PENN's actions are extreme and outrageous.

**188.**    SHELLPOINT's, and FREDDIE MAC's or NEW PENN's actions are intentional and specifically in a fashion intended to produce emotional distress, or recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.

**189.**    Plaintiff is in fact suffering from emotional distress as a result of DITECH's transfer to SHELLPOINT, and SHELLPOINT's, and FREDDIE MAC's or NEW PENN's unlawful attempt to take Plaintiff's home again.

**190.**    SHELLPOINT's, and FREDDIE MAC's or NEW PENN's misconduct are the actual and proximate causes of Plaintiff's emotional distress, and no reasonable person could be expected to endure the unlawful attempted taking of their home twice.


**WHEREFORE**, PLAINTIFF demands:

    a. Compensatory Damages

    b. Punitive Damages

    c. Statutory Damages

    d. Restitution

    e. Injunctive Relief

    f. Attorney fees and costs

    g. All other relief this Court determines to be just and fair.


## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury and will not be satisfied with fewer than six jury members.

```
                                STRATTON STEPP ASHTYANI, LLP
                                ATTORNEYS FOR PLAINTIFF

Date:  October 10, 2017         Nicholas A. Stratton, Esq.
                                /s/ Nicholas A. Stratton
                                STRATTON STEPP ASHTYANI, LLP

                                /S/ Nima Ashtyani
                                Nima Ashtyani, Esq.
                                STRATTON STEPP ASHTYANI, LLP
```